## Case No. 15,961.

UNITED STATES v. ONE THOUSAND SEVEN HUNDRED AND FIFTY–SIX SHARES OF CAPITAL STOCK.

[5 Blatchf. 231.] [1]

Circuit Court, S. D. New York. May 29, 1865.

CONFISCATION—CIVIL WAR—PROPERTY EMPLOYED IN AID OF REBELLION — INFORMER'S SHARE — JURISDICTION — SEIZURES ON LAND — INTERNATIONAL LAW—PRACTICE—PARTIES.

1. Under the act of August 6, 1861 (12 Stat. 319), a forfeiture of property is provided for only in case the property is employed, with the knowledge or consent of its owner, in aid of insurrection.

2. By that act, one-half of the proceeds of a forfeiture under that act goes to the informer.

3. The whole of the proceeds of a forfeiture under the act of July 17, 1862 (12 Stat. 589), goes to the United States.

4. A district court of the United States in New York cannot acquire jurisdiction in rem,

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

to declare a forfeiture, under those acts, of shares in the capital stock of an Illinois corporation.

5. The seizure of enemy property, by the United States, as prize of war, on land, jure belli, is not authorized by the law of nations, and can be upheld only by an act of congress.

[Cited in U. S. v. Stevenson, Case No. 16,396.]

6. Under the said acts of August 6, 1861, and July 17, 1862, the proceedings to condemn enemy property, when seized, must conform to the proceedings in admiralty and revenue cases.

[Cited in U. S. v. Stevenson, Case No. 16,396.]

7. An alien enemy has, under those acts, a right to appear as claimant of his property sought to be condemned, as forfeited, by a prosecution in rem under those acts, and to answer and defend the suit.

[Cited in De Jarnett v. De Giverville, 56 Mo. 445.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel of information, filed in the district court, by the United States, against 1,756 shares of the capital stock of the Great Western Railroad Company of Illinois, a corporation created under the laws of the state of Illinois, praying its condemnation, as having been the property of one Leroy M. Wiley, and as being forfeited to the United States. The district court decreed in favor of the libellants. The decree ordered the stock to be sold, and the proceeds, after the payment of a private debt of Wiley's, and of the costs of the suit, to be paid, one-half to the United States and the other half to the informer mentioned in the libel. Wiley and the company, who appeared and put in claims and answers, appealed to this court.

William M. Evarts and Charles Donohue, for the United States.

Daniel Lord and Jeremiah Larocque, for claimants.

NELSON, Circuit Justice. The libel in this case is founded upon two acts of congress, one passed on the 6th of August, 1861 (12 Stat. 319), and the other passed on the 17th of July, 1862 (Id. 589).

The 1st section of the act of August 6, 1861, declares, that if any person or persons, &c., shall purchase or acquire, sell or give, any property of whatsoever kind or description, with the intent to use or employ the same, or suffer the same to be used or employed, in aiding or abetting such insurrection or resistance to the laws, or any person or persons engaged therein, or if any person or persons, being the owner or owners of any such property, shall knowingly use or employ, or consent to the use or employment of the same, as aforesaid, all such property is declared to be lawful subject of prize and capture, wherever found, &c. The 2d section declares, that such prizes and capture shall be condemned in the district or circuit court of

the United States, &c., or, in admiralty, in any district in which the same may be seized, or into which they may be taken and proceedings first instituted. The 3d section provides, that the attorney-general, or any district attorney of the United States, may institute the proceedings of condemnation, and, in such case, wholly for the benefit of the United States, or, any person may file an information with such attorney, in which case the proceedings shall be for the use of such informer and the United States in equal parts.

The 6th section of the act of July 17, 1862, declares, that if any person, &c., being engaged in armed rebellion against the government of the United States, or aiding or abetting such rebellion, &c., all the estate and property, moneys, stocks, and credits of such person shall be liable to seizure as aforesaid, and it shall be the duty of the president to seize and use them as aforesaid, or the proceeds thereof. The 7th section declares, that proceedings in rem shall be instituted in the name of the United States, in any district court thereof, &c., within which the property or any part thereof may be found, or into which the same, if movable, may first be brought, which proceedings shall conform as nearly as may be to proceedings in admiralty or revenue cases; and, if said property, whether real or personal, shall be found to have belonged to a person engaged in rebellion, or who has given aid or comfort thereto, the same shall be condemned as enemies' property, and become the property of the United States, and may be disposed of as the court shall decree, and the proceeds thereof paid into the treasury of the United States.

Leroy M. Wiley appeared by his proctors, and put in a claim to the stock in question, and also his answer to the libel of information, which were afterwards stricken, by order of the court, from the files. [Case No. 15,-960a.] The Great Western Railroad Company also appeared by its proctors, and filed a claim and answer, which also were subsequently stricken from the files, by like order. [Id. 15,960b.] Afterwards, a decree of default was entered against the parties claimants. Proofs were then taken, ex parte, of the facts charged in the libel of information, and a decree of condemnation of the stock was entered, directing a sale of it by the marshal, and that the proceeds, after the payment of the costs and charges, be distributed to the United States and the informer in equal parts. The claim and answer of Wiley were stricken from the files, as appears from the papers and the opinion of the court, upon the ground that it was shown that he was a resident of the state of Alabama, a state declared to be in insurrection against the United States, and hence an alien enemy, and that he had no persona standi in court. The claim and the answer of the railroad company were stricken out, upon the ground, substantially, that they had intervened for the benefit of Wiley, a stockholder in the company.

It will be observed, that the principle or ground of proceeding, with a view to the condemnation and forfeiture of the property under the two acts of congress, is different. The first act places the forfeiture upon the fact of the use or employment of the property in aiding, abetting or promoting the insurrection or resistance to the laws. All such property is declared to be lawful prize, and liable to confiscation. The real issue under that act is, whether or not the property seized has been so used or employed with the knowledge and consent of the owner. The owner may or may not be an alien enemy; and, even if he be an alien enemy, his property is not the subject of a proceeding under the act, unless it can be shown to have been used or employed for the purpose mentioned. This particular use or employment lies at the foundation of the forfeiture. Now, the property sought to be confiscated in the present proceedings, is stock in an incorporated company, in the state of Illinois. Its situs is in that state; and there is great difficulty in perceiving how such an interest or species of property is capable of being used or employed in contravention of the provisions of the statute. But, waiving this, although the court required proof of the fact of the use or employment of the stock in aiding or abetting the insurrection, within the meaning of the act of congress, before condemnation, we find no evidence whatever in the record on the subject; and yet the forfeiture is declared under the act of August 6, 1861, as one moiety of the proceeds is directed to be paid to the informer. Under the act of July 17, 1862, the whole of the proceeds go to the government. This decree must have been an oversight, as all the proofs on the record apply exclusively to the offence charged in the latter act. There is some confusion of ideas in the libel of information, which, probably, misled the court in the decree; for, while the libel embraces both acts of congress, which, as we have seen, are different in principle and ground of proceeding, it concludes by praying that the proceeds, after condemnation and sale of the stock, be distributed to the government and the informer in equal parts; and the decree is in conformity with the prayer. The libel of information and the decree are under the act of August 6, 1861, while the proofs are all under the act of July 17, 1862.

Besides the irregularities in the proceedings, already stated, it is quite clear that the court below never acquired jurisdiction of the res, by any lawful seizure of the stock in question. The property consisted of an interest in the capital stock and dividends of an incorporated company in the state of Illinois, and which, as respects the legal proceedings in the Southern district of New York, is, in judgment of law, to be regarded as a foreign corporation, as much so as a corporation in London. The process of the court could not reach it. The situs of the property was beyond this district, and out of the jurisdiction of the court. It appears that the company had an

agent in the city of New York, in charge of a transfer book of their stock, and who was simply authorized to receive and enter transfers of stock; and the seizure attempted and sought to be maintained was made through this agent. The act of August 6, 1861, provides, that the prizes and captures shall be condemned in the district or circuit court of the United States in any district in which the same may be seized, or into which they may be taken, and the proceedings be first instituted. By the act of July 17, 1862, proceedings in rem may be instituted in any district court within which the property may be found, or into which the same, if movable, may first be brought. Now this stock of the Illinois corporation belonging to Wiley, and which is the subject of condemnation by the decree of the court, could be seized only in the district in which the corporation is situated. It could neither be seized in this district nor be brought into it. Nor could it be seized or condemned without instituting proceedings against the corporation, the stock of which is sought to be condemned. It may be that a suit might be instituted against the owner in personam, and such proceedings be had as would lead to condemnation and forfeiture. But, in the absence of the owner, and in a proceeding in rem against the stock itself, which is the present case, the seizure and condemnation could take place only in the district in which the corporation is situated.

We come now to what I regard as the most important question in the case, and that is, whether or not the court below was right in striking from the files the claim and answer of Wiley, and in entering his default, on the ground that he was an alien enemy, and could have no standing in court. The act of July 17, 1862, provides, "that, to secure the condemnation and sale of any such property, after the same shall have been seized, &c., proceedings in rem shall be instituted, in the name of the United States, in any district court, &c., which proceedings shall conform as nearly as may be to proceedings in admiralty or revenue cases; and, if said property, whether real or personal, shall be found to have belonged to a person engaged in rebellion, or, who has given aid or comfort thereto, the same shall be condemned as enemies' property, and become the property of the United States," &c. The act of August 6, 1861, speaks of the seizures, as prizes and captures to be condemned either in the circuit court, or in admiralty, in the district court. These acts provide for the seizure of enemies' property, as prize of war, on land, jure belli, which, according to the case of Brown v. U. S., 8 Cranch [12 U. S.] 110, is not authorized by the law of nations, and can be up-

held only by an act of congress; in other words, by the municipal law of the nation seeking to enforce the forfeiture. The law of nations authorizes captures, as prize of war, on the high seas—these acts of congress, on the land; and, in the latter case, the acts expressly provide that the proceedings shall conform to the proceedings in admiralty and revenue cases, and that, if the property is found to belong to a person engaged in the rebellion, it shall be condemned as enemies' property. These acts of congress are but an extension of the rule which, according to international law, has always been applied, jure belli, to enemies' property at sea. Now, the principle that an alien enemy has no standing in court, and cannot appear and defend his property seized as prize of war on the high seas, does not appear to have ever been applied to a claimant in the admiralty. On the contrary, the books are full of cases in which the very question involved was the national character of the claimant—whether he was a neutral or an enemy. I need refer to only a few of them: The Indian Chief, 3 C. Rob. Adm. 12; La Virginie, 5 C. Rob. Adm. 98; The Fama, Id. 106; The Boedes Lust, Id. 234; The President, Id. 277; The Gerasimo, 11 Moore, P. C. 88; The Baltica, Id. 141. In many of the prize cases growing out of the recent Rebellion, the main point involved turned upon the fact whether or not the claimant was a neutral, or a loyal citizen, or an enemy. Indeed, at the very last term of the supreme court, these questions were before it and were fully discussed and decided. All of these cases are applicable to and control the question in the present case. The two proceedings—the one a capture on the high seas, the other a capture on land—are analogous, not merely in their nature and purpose, but are made so by the acts of congress.

I have not deemed it necessary to discuss the question raised, whether or not the claimant can be regarded as an alien enemy, he having been a citizen of the United States at the breaking out of the war, and being still a resident of one of the states, inasmuch as, according to the cases already referred to, even if he be an alien enemy, he is entitled to appear as a claimant, and contest the allegations in the libel.

Several other questions of great interest and importance have been discussed in the course of the argument, going to the merits; but, as the views already expressed dispose of the case, I forbear to notice them.

The decree of the court below must be reversed, and the libel of information be dismissed.